Melvin Doyle **BAIR**, Petitioner,

v.

Thomas **PHILLIPS**, Respondent.

No. 99–CV–72643–DT.

United States District Court,
E.D. Michigan,
Southern Division.

June 21, 2000.

Melvin Doyle Bair, Rochester, MN, pro se.

Brad Beaver, A.A.G., Lansing, MI, for Thomas Philips.

## OPINION

DUGGAN, District Judge.

Melvin Doyle Bair ("Petitioner") seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, Petitioner challenges his conviction on one count of manslaughter, MICH.COMP.LAWS § 750.321. For the reasons stated below, Petitioner's application for a writ of habeas corpus shall be denied.

### Background

Petitioner's conviction arose out of the disappearance of his mother Ina Bair on January 9, 1985. Petitioner told extended family members that he had placed his mother in an unlicenced nursing home and that she did not want him to divulge her location to anyone. In 1988, Petitioner's family members initiated their own investigation to find Ina Bair, contacting the Michigan State Police, who in turn initiated a missing person's investigation.

During the course of the police investigation, it was determined that Petitioner had been receiving and depositing his mother's social security benefit checks, as well as the checks that she had been receiving from her late husband's pension. Petitioner deposited these checks into an account held jointly by Petitioner and his mother but apparently did not withdraw any of the funds. (12/12/90 Plea Tr. at 31). At one point Petitioner told the police that he would not "make it easy for you boys." (*Id.* at 30). On several occasions, Petitioner told investigators that his memory was dim as to his mother's location. (*Id.*). Another time, Petitioner produced what appeared to be a fake photograph showing his mother holding up a current newspaper in an attempt to show police that she was still alive. (*Id.* at 32–33).

Petitioner's family ultimately filed a petition in probate court to have a guardian appointed over Ms. Bair. At the initial hearing, Petitioner refused to disclose his mother's location to the court. At a second hearing in probate court, held on October 10, 1989, Petitioner told the court that his mother was living in a private home but refused to disclose the location. When Petitioner refused to tell the court where his mother was, the probate court held him in contempt of court and placed him in jail. At several other probate court hearings, Petitioner either refused to divulge his mother's whereabouts to the court or claimed that he was unable to recall where she was located.

On November 28, 1989, the probate court appointed a guardian over Ms. Bair after determining that she was a "disappeared person" under state law. At that time, the probate court determined that Petitioner was being untruthful and indicated that it would hold a full hearing on the contempt issue.

On January 9, 1990, Petitioner appeared before the probate court, with counsel, and after discussions between Petitioner's counsel and the prosecuting attorney, Petitioner agreed to reveal his mother's location. In exchange, the prosecutor agreed not to pursue any charges related to the

acceptance of the social security checks or to Petitioner's perjury in the probate court. The prosecutor further agreed that if it was determined that any criminality was involved in Ina Bair's death, the prosecutor would not file any charges against Petitioner above the charge of manslaughter.

After the agreement between the prosecutor and Petitioner had been placed on the record, Petitioner's counsel informed the probate court that Petitioner had left his home on January 9, 1985 with his mother. Petitioner's mother was riding in the front passenger seat of the car, but was not wearing a seat belt. While driving on Dixie Highway between Grand Blanc and Holly, Michigan, Petitioner's mother, "while playing with the handle of the door, opened the car door and fell out of the car landing on the pavement." (1/9/90 Hr'g Tr. at 43). Petitioner believed that his mother fell underneath the car and may have been run over by it. (*Id.*). Petitioner stopped the car and got out to check on his mother, who appeared dead to him. (*Id.*). Petitioner attempted to flag down several cars but when he was unable to get anyone to stop, Petitioner took his mother to a location some distance away from the road and buried her there. (*Id.*).

Petitioner directed the police to a location by the side of Dixie Highway near Mount Holly. The body of Ina Bair was ultimately exhumed from the location where Petitioner had buried her. An autopsy was performed on Ina Bair's body and the medical examiner noted that the victim's arms looked as though she had been pushing against the ceiling of the grave in an attempt to lift it. A full body x-ray was performed and no fractures were discovered on the body. It was the medical examiner's opinion that because of the attitude of the body and its positioning, the victim died of traumatic asphyxia, *i.e.,* she had suffocated in the grave.

Because of the publicity generated by the case, police were contacted by two different persons in the Grand Blanc area who informed police that they recalled traveling separately near the intersection of Interstate–75 and Holly Roads in the winter of 1985 when they noticed a car slow down and reach a portion of the entrance ramp. (12/12/90 Plea Tr. at 44). An elderly woman attempted to get out of the car and landed on her back on the ground. The two persons both stopped to see if they could help the woman. A man came from the driver's side of the car and told them that he was her son and was taking her to a rest home and that he did not need any help. The man then picked up the woman but the woman struggled against him with "a look of terror on her face." (*Id.* at 45). The man placed the woman back into the car and drove away. (*Id.*).

Petitioner was charged with manslaughter on January 12, 1990. The district court ordered that Petitioner be evaluated for his mental competency as well as his state of mind at the time of his mother's death. On April 30, 1990, a forensic examiner indicated that Petitioner was not competent to stand trial but that there was a good possibility that he would regain competency within the time period specified by the statute. On May 10, 1990, the court found Petitioner incompetent to stand trial and ordered that Petitioner be given treatment to render him competent. On August 9, 1990, the Chief Clinician at the Forensic Center for Psychiatry found Petitioner competent to stand trial.

On December 12, 1990, Petitioner entered a *nolo contendere* plea to the charge of manslaughter. Prior to the plea being entered, the prosecutor indicated on the record that an agreement had been entered into with Petitioner in which he would not be charged with anything higher than manslaughter, in exchange for which Petitioner would reveal his mother's whereabouts, which he had done. The prosecutor indicated that this was the reason that the charge was manslaughter. For clarification, the trial court then asked whether the agreement included a promise

that Petitioner would not be charged with murder, to which both attorneys answered affirmatively. The trial court then indicated that because of the passage of time and Petitioner's mental state, he would accept a plea of *nolo contendere* to the charge. (*Id.* at 4–6).

During the plea colloquy, the court asked Petitioner whether it was his understanding that he would plead *nolo contendere* to the manslaughter charge in exchange for the prosecutor's promise not to charge him with murder. Petitioner indicated that this was his understanding. (*Id.* at 8–9). Petitioner understood that by pleading *nolo contendere,* he would be giving up his right to a trial. Petitioner informed the court that his mind was clear that day and he understood the proceedings. Petitioner further indicated that he understood that the maximum possible penalty for manslaughter was fifteen years in prison. (*Id.* at 10). On January 15, 1991, Petitioner was sentenced to seven and one half to fifteen years in prison.

Prior to the expiration of the eighteen-month time period, pursuant to M.C.R. 7.205(F)(3), for seeking direct review of his conviction to the Michigan Court of Appeals,[1] Petitioner filed a motion for relief from judgment with the trial court, which was denied because Petitioner still had time to seek direct review of his case. Petitioner then attempted to file an appeal of the denial of his motion for relief from judgment with the Michigan Court of Appeals, but the appeal was denied under M.C.R. 7.216(A)(10) because there is no appeal of right from the denial of a motion for relief from judgment. *People v. Bair,* No. 155860 (Mich.Ct.App. Oct. 9, 1992).

On April 27, 1993, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals. On September 8, 1993, the Michigan Court of Appeals remanded the case to the trial court, pursuant to M.C.R. 6.508, for consideration of the merits of the issues raised in Petitioner's delayed application for leave to appeal. The trial court was also ordered to appoint appellate counsel for Petitioner if he was indigent. *People v. Bair,* No. 163851 (Mich.Ct.App. Sept. 8, 1993).

The State Appellate Defender's Office ("SADO") was appointed to represent Petitioner and filed a brief on his behalf in the trial court. After Petitioner filed a complaint against SADO with the Michigan Attorney Grievance Commission, SADO withdrew from representation and another attorney was appointed to represent Petitioner. Petitioner also filed a supplemental *pro se* brief.

Ultimately, on February 7, 1997, the trial court denied Petitioner's motion for relief from judgment, addressing the merits of the claims raised by Petitioner. *People v. Bair,* No. 90–43795–FH (Genesee County Circuit Ct. Feb. 7, 1997). Petitioner's counsel then filed an application for leave to appeal, which was denied by the Michigan Court of Appeals for lack of merit on the grounds presented. *People v. Bair,* No. 201957 (Mich.Ct.App. July 30, 1997). The Michigan Supreme Court subsequently denied leave to appeal. *People v. Bair,* 457 Mich. 881, 586 N.W.2d 923 (1998). Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Whether habeas relief should be granted because the Petitioner's plea was entered in violation of due process of law guaranteed under the Fourteenth Amendment of the United States Constitution where it was (1) submitted in exchange for the prosecutor's promise to not charge him with murder, (2) the possibility of a murder charge was already bargained away by the prosecution a year earlier, and (3) such a plea is manifestly unjust and/or offensive to the maintenance of a sound judicial process.

---

1. M.C.R. 7.205(F)(3) used to provide a defendant eighteen months after entry of the order or judgment to file a late appeal. As of November 1, 1995, the time was shortened to twelve months.

II. Whether habeas relief should be granted because the Petitioner was deprived of his right to the effective assistance of counsel guaranteed under the Sixth Amendment of the United States Constitution in that he allowed Petitioner to waive his right against self-incrimination before he had explored whether Petitioner was mentally competent to make such a decision and his legal advice rendered his nolo contendere plea involuntary and deprived the Petitioner of his appeal of right.

III. Whether habeas relief should be granted because the Petitioner's nolo contendere plea must be vacated where the trial court erred in determining that the Petitioner's mental incompetency was a valid reason for its acceptance, and it would be manifestly unjust to allow the nolo contendere plea to stand.

## Discussion

*Standard of Review*

The provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this case because Petitioner filed his habeas application after the effective date of the AEDPA. *See Lindh v. Murphy,* 521 U.S. 320, 336, 117 S.Ct. 2059, 2068, 138 L.Ed.2d 481 (1997). The AEDPA provides:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir.1997).

The United States Supreme Court has only recently defined the applicability of § 2254(d)(1). With respect to the "contrary to" clause, there are two situations in which a state court decision will be contrary to clearly established federal law. First, a state court decision is "contrary to" the Supreme Court's clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the Supreme Court's cases. Second, a state court decision is also "contrary to" the Supreme Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from the Supreme Court precedent. *Williams v. Taylor,* —— U.S. ——, —— —— ——, 120 S.Ct. 1495, 1519–20, 146 L.Ed.2d 389 (2000).

On the other hand, a "run-of-the-mill state-court decision" that applied the correct legal rule from the Supreme Court's cases to the facts of a petitioner's case does not fit comfortably within the "contrary to" clause of § 2254(d)(1). *Id.* at 1520. These cases, therefore, are reviewed under the "unreasonable application" language of § 2254(d)(1). A federal habeas court making the "unreasonable application" inquiry must ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 1521. Thus, a federal habeas court may not issue a writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, the application must also be unreasonable. *Id.* at 1522.

Finally, the term "clearly established federal law" refers to the holdings, as opposed to the dicta, of the United States Supreme Court's decisions at the

time of the relevant state court decision. *Id.* at 1523.

### Illusory Plea Claim.

Petitioner first claims that his *nolo contendere* plea must be set aside because it was obtained in exchange for an illusory promise. Petitioner claims that the trial court incorrectly stated that there was a plea bargain that called for him to plead *nolo contendere* to a lesser charge of manslaughter in exchange for which, Petitioner would not be charged with murder. Petitioner contends that the plea was illusory because the prosecutor had already agreed, in exchange for Petitioner's assistance in disclosing his mother's burial site, that he would only be charged with nothing more serious than manslaughter. Thus, Petitioner argues that because he was not potentially subject to any charge higher than manslaughter, any "plea bargain" that Petitioner would not be charged with murder was illusory.

■ A plea of guilty must be knowingly and voluntarily made. The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution,* 927 F.2d 256, 257 (6th Cir.1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he or she is pleading guilty. *King v. Dutton,* 17 F.3d 151, 154 (6th Cir.1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson,* 991 F.2d 324, 326 (6th Cir.1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.*

■ It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson,* 467 U.S. 504, 508–09, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). A guilty plea "entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.,* bribes)." *Id.* at 509, 104 S.Ct. at 2547 (quoting *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)). A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Cunningham v. Diesslin,* 92 F.3d 1054, 1060 (10th Cir.1996).

In the present case, Petitioner contends that his *nolo contendere* plea was based upon an illusory plea agreement between the prosecutor and himself because any murder charges had already been bargained away in probate court prior to the initiation of any criminal proceedings against him. The Court first notes that although the trial court misstated that the agreement worked out between the prosecutor and Petitioner in probate court called for Petitioner to agree to plead *nolo contendere* to the manslaughter charge, the prosecutor, at the beginning of the plea hearing, accurately stated the terms of the agreement entered into between Petitioner and the prosecutor in probate court. Namely, that in exchange for Petitioner's willingness to disclose his mother's whereabouts, he would be charged with nothing more serious than manslaughter. The prosecutor did not indicate that this agreement required Petitioner to plead

guilty or *nolo contendere* to the manslaughter charge in circuit court.

■ Petitioner's counsel confirmed that the prosecutor accurately stated the agreement. The terms of this agreement had also been placed on the record at the time of Petitioner's hearing in probate court. Petitioner's claim that he had a subjective misunderstanding, based upon the trial court's misstatement that the agreement called for him to plead *nolo contendere* to the manslaughter charge in exchange for the prosecutor's agreement to drop murder charges against him, constitutes an insufficient basis to set aside Petitioner's *nolo contendere* plea in the circumstances of this case. *Smith v. McCotter,* 786 F.2d 697, 701 (5th Cir.1986); *see also Nichols v. Perini,* 818 F.2d 554, 558–559 (6th Cir.1987) (finding that habeas relief should not have been granted based upon crediting the petitioner's subjective version of his understanding of the plea agreement).

Moreover, Petitioner cannot claim that any agreement between the prosecutor and himself was illusory. In the present case, the prosecutor fulfilled his promise not to charge Petitioner with either first or second degree murder. Moreover, in light of the autopsy findings that showed that the victim may have been buried alive, as well as Petitioner's own evasiveness as to his mother's whereabouts for several years, there was evidence that could have supported a first or second degree murder charge. Therefore, the prosecutor's agreement to forego charging Petitioner with murder was not illusory.

In case *sub judice,* Petitioner indicated that he understood the nature of the charge against him and the consequences of entering a *nolo contendere* plea to the charge of manslaughter. A review of the record demonstrates that Petitioner knowingly and intelligently entered this plea. Petitioner's first claim is without merit.

*Ineffective Assistance of Counsel Claim.*

### 1. Standard of Review

To show that he was denied the effective assistance of counsel under federal constitutional standards, a petitioner must satisfy a two-prong test. First, the petitioner must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.; O'Hara v. Wigginton,* 24 F.3d 823, 828 (6th Cir.1994). In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

Second, the petitioner must show that such performance also prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

### 2. The individual claims

Petitioner first claims that his attorney was ineffective because he allowed Petitioner to disclose his mother's burial site to the probate court without having resolved whether Petitioner was mentally competent to waive his right against self-incrimination.

■ A defendant is not prejudiced by counsel's failure to seek a competency examination, absent an actual basis to support a claim of incompetency at the time of the proceeding. *See Blanco v. Singletary,* 943 F.2d 1477, 1507 (11th Cir.1991); *see also Hernandez v. United States,* 839 F.Supp. 140, 145 (E.D.N.Y.1993) (finding

that in the absence of evidence indicating that petitioner's competency was in doubt, the failure of counsel to seek a competency determination prior to the entry of a guilty plea was not ineffective assistance of counsel).

■ In the present case, Petitioner offers no evidence to show that he was acting abnormally at the time of the probate court hearing on January 9, 1990, or that he had informed counsel that he had a prior history of mental problems. The only evidence of incompetency offered by Petitioner is the Forensic Center report dated April 14, 1990, which found Petitioner incompetent to stand trial.[2] Although the examiner found Petitioner to be incompetent, the examiner's finding was somewhat equivocal. The report found Petitioner to be oriented to place, person, and time.

Although the examiner found that there were times when Petitioner had genuine difficulties and had significant attention and concentration problems, there were other times that the examiner felt that Petitioner was being "manipulative and purposefully obstructionistic." Although Petitioner complained that he had memory and concentration problems, the examiner noted that "in conversation Mr. Bair simply did not appear as confused and deteriorated as someone with such striking attention, concentration, and short-term memory processing problems would be." The examiner further noted that although Petitioner indicated that he faked understanding of what was going on in court, Petitioner was able to discuss with some details his past court proceedings and his past interactions with the police and his attorneys.[3] The examiner further noted that Petitioner indicated that he had experienced auditory hallucinations but denied blatant grandiose or paranoid delusions.

Petitioner did appear clinically depressed to the examiner and indicated a history of psychiatric treatment, including receiving several medications.[4]

The examiner summarized her findings by indicating that Petitioner presented a "puzzling picture" at the time of his interview. Although there was some evidence of thought disorder, the examiner felt that some of Petitioner's inability to answer questions was volitional. The examiner further felt that Petitioner most likely exaggerated his difficulties. Although he presented a long history of auditory hallucinations, evidence of thought disorder, and appeared genuinely depressed, the examiner felt that Petitioner exaggerated his symptoms and his clinical presentation did not fit with his reported subjective experience of severe impairment. The examiner also felt that there was a good probability that Petitioner could regain his competency to stand trial within the applicable time period.[5] Petitioner was ultimately found competent to stand trial by the Chief Clinician of the Forensic Center on August 9, 1990.

As the foregoing demonstrates, Petitioner's behavior was somewhat equivocal. There was nothing in the report that would lead this Court to find that Petitioner's mental condition was so obviously irrational or deteriorated, such that his attorneys would have been on notice that Petitioner was mentally incompetent at the time of the probate court hearing. Thus, the attorneys' failure to seek a competency evaluation prior to entering into an agreement with the prosecutor did not amount to deficient representation.

■ Moreover, the attorneys' decision to proceed forward with this agreement with the prosecutor, rather than to seek a competency determination prior to Petitioner revealing his mother's whereabouts,

**2.** *See* Letter from Carol E. Holden, PhD. to The Honorable William R. Evans, dated April 30, 1990.

**3.** (4/30/90 Letter at 2).

**4.** (4/30/90 Letter at 3).

**5.** (4/30/90 Letter at 5–6).

was not an unreasonable legal strategy. As a result of their decision to consummate this deal with the prosecutor's office, Petitioner was charged only with manslaughter, a fifteen-year felony, rather than with first or second degree murder, even though the evidence could have supported either charge. The Court finds that Petitioner has failed to show that his counsel was ineffective in proceeding with this agreement rather than first determining Petitioner's competency to waive his right against self-incrimination.

Petitioner also claims that one of his trial attorneys was ineffective because he advised Petitioner, at the time of sentencing, that he had no appealable issues, and as a result, Petitioner did not file his notice of appeal and thereby lost his appeal of right.

■■■ The failure to perfect Petitioner's direct appeal did not prevent Petitioner from challenging his conviction in the Michigan courts, because Petitioner was able to present his claims in a motion for postconviction relief. *See Hollin v. Sowders,* 710 F.2d 264, 267 (6th Cir.1983). The state courts' rulings on Petitioner's motion for postconviction relief granted Petitioner an adequate substitute for direct appellate review and therefore his attorney's advice did not cause him any injury. *See Gardner v. Ponte,* 817 F.2d 183, 189 (1st Cir.1987). Petitioner obtained a hearing before the trial court on all the issues that he would have raised in a direct appeal. These same issues were reviewed by two appellate courts. Petitioner was represented by counsel and the issues were fully briefed. The failure to advise Petitioner to appeal did not cause Petitioner any demonstrable harm because his claims were eventually considered and rejected on valid state grounds by the same courts that would have heard his direct appeal. *Hollin,* 710 F.2d at 269 (Merritt, J., concurring).

**6.** M.C.R. 6.302(D)(2)(a) requires the trial court to "state why a plea of nolo contendere

Accordingly, Petitioner's ineffective assistance of counsel claims are without merit.

*Validity of the Nolo Contendere Plea Claim.*

Petitioner lastly contends that there was no valid reason tendered by the trial court under M.C.R. 6.302(D)(2)(a) [6] for accepting Petitioner's *nolo contendere* plea as opposed to a plea of guilty. The trial court found that a *nolo contendere* plea was appropriate due to "lapse of time and also the question as to [Petitioner's] mental state at the time of the commission of the offense." (12/12/90 Plea Tr. at 5). Petitioner contends that the trial court's finding is "erroneous." (Pet. at 20).

■■■ Violations of state law and procedure that do not infringe specific federal constitutional protections are not cognizable claims under § 2254. *Estelle v. McGuire,* 502 U.S. 62, 67–68, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991). On habeas review, a federal court is not permitted to review whether a plea colloquy conformed with the strictures of state rules, but only whether it comported with the requirements of constitutional due process. *Ramos v. Rogers,* 170 F.3d 560, 563 n. 2 (6th Cir.1999). The fundamental constitutional consideration when a petitioner challenges his plea is whether it was voluntary. This rule is the same for pleas of guilty or *nolo contendere. Wallace v. Turner,* 695 F.2d 545, 548 (11th Cir.1983) (holding that state court judge's acceptance of petitioner's voluntary *nolo contendere* plea without a factual basis, which violated state procedural rule, did not violate petitioner's federal constitutional rights so as to provide the basis for habeas relief).

■■■ In the present case, the trial court's alleged "erroneous" finding, under M.C.R. 6.302(D)(2)(a), regarding Petitioner's competence, involves a matter of state

is appropriate."

law and does not provide a basis for federal habeas relief. Because Petitioner has failed to establish that his plea was involuntarily made, his last claim is without merit.

### Conclusion

For the reasons set forth above, this Court concludes that Petitioner is not entitled to federal habeas relief. Accordingly, Petitioner's request for federal habeas relief shall be denied.

A Judgment consistent with this Opinion shall issue forthwith.