**Warren Lee JOHNSON, Petitioner,**

v.

**Millicent WARREN, Respondent,**

No. CIV. 03–40154.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 15, 2004.

Earl R. Spuhler, Rogers City, MI, for Warren Johnson, Petitioner.

Debra M. Gagliardi, Michigan Department of Attorney General, Habeas Corpus Division, Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Millicent Warren, Warden, Respondent.

### OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

GADOLA, District Judge.

Warren Lee Johnson, ("petitioner"), presently confined at the Thumb Correctional Facility in Lapeer, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed through counsel, petitioner challenges his conviction on one count of armed robbery, Mich. Comp. Laws 750.529, one count of first-degree home invasion, Mich. Comp. Laws 750.110a(2), one count of possession of a firearm in the commission of a felony, Mich. Comp. Laws 750.227b, and being a fourth felony habitual offender, Mich. Comp. Laws 769.12. For the reasons stated below, the Court will deny petitioner's application for writ of habeas corpus.

### I. Background

Petitioner was convicted of the above offenses following a jury trial in the Isabella County Circuit Court. Petitioner was sentenced to 300 to 450 months on the armed robbery conviction, 160 to 240 months on the first-degree home invasion conviction, and received a consecutive two-year sentence on the felony firearm conviction. The convictions were based on the following events.

On August 11, 1995, Matthew Benedict returned to his home in Coldwater Township, Michigan, where he lived with his parents. As Benedict approached the house, he noticed an unfamiliar motor vehicle parked in the driveway. The vehicle's motor was running and the driver's

side door was open. Benedict remained inside of his car. A person later identified as petitioner exited the garage, pointed a handgun at Benedict and ordered him to leave. Benedict observed another man inside of the garage who was holding some rifles and other items that belonged to his family. Benedict left his house and went to call the police. When Benedict returned to the house with a sheriff's deputy, Benedict and the deputy noticed that cupboard doors and drawers were opened and items had been thrown about. Three firearms, some ammunition, a coin collection, and some rings had been stolen from the house.

Benedict subsequently identified petitioner in a live corporeal line-up as the man who had pointed a firearm at him in the driveway of his home. Benedict also identified a number of items that had been taken from his home, including an assault rifle, ammunition, and parts of his coin collection.

Undersheriff William Burns arrested petitioner and advised him of his *Miranda* warnings. After being advised of his constitutional rights, petitioner admitted to Burns that he had been present at the Benedicts' house at the time of the break-in. Petitioner told Burns that his co-defendant, Timothy Longnecker, had asked him to go with him to his brother's house. Once the two men arrived at this house, Longnecker entered the house. Longnecker returned shortly thereafter and asked petitioner to go into the house and retrieve some guns that were on the bed in the basement of the home. Petitioner told Burns that he and Longnecker were wearing gloves when they entered the home. Petitioner admitted removing three guns from the house. When petitioner was in the garage, he claimed that he observed Longnecker pointing a gun at someone who was sitting in a car parked in the driveway and ordering that person to

leave. Petitioner told Burns that he and Longnecker left the house and hid the weapons in the woods.

Petitioner told Burns that Longnecker later asked him to help retrieve the guns from the woods because someone had either purchased the guns or was interested in purchasing them. Longnecker and petitioner recovered the weapons and took them to Bar One. Pawnshop owner A.J. Baba testified that Longnecker spoke to him on August 12, 1995 at Bar One about buying some guns. Baba told Longnecker that a man named Glen Dixon might be interested in purchasing them. Baba also indicated that Longnecker and a man who was with him then spoke with Dixon about buying the weapons. Detective Bart Dexter of the Midland County Sheriff's Department testified that he recovered an assault rifle and a shot gun that had been stolen from the Benedict home from Dixon.

Petitioner's father, James Johnson, testified that his son and Longnecker came to his house on August 11, 1995 and stayed for three hours. Longnecker told James Johnson that he and petitioner had just robbed a house and had stolen guns. Longnecker indicated that he had also pulled a gun on a boy and ordered him to leave the yard.

Petitioner's conviction was affirmed on appeal. *People v. Johnson,* 192067, 1997 WL 33343862 (Mich.Ct.App. Oct. 31, 1997); *lv. den.* 459 Mich. 856, 583 N.W.2d 901 (1998). Petitioner subsequently filed a petition for writ of habeas corpus, which was dismissed without prejudice on the stipulation of the parties. *Johnson v. McLemore,* No. 99–74282 (E.D.Mich. Oct. 24, 2000). Petitioner then filed a post-conviction motion for relief from judgment, which the state trial court denied. *People v. Johnson,* 95–7400–FC (Isabella County Cir. Ct., Apr. 12, 2001). The Michigan Court of

Appeals granted petitioner leave to appeal, but ultimately affirmed the trial court's denial of the post-conviction motion. *People v. Johnson*, 235484, 2002 WL 31058064 (Mich.Ct.App. Sept. 13, 2002). The Michigan Supreme Court denied petitioner leave to appeal. *People v. Johnson*, 468 Mich. 877, 659 N.W.2d 235 (2003).

Petitioner has now filed this petition for writ of habeas corpus, in which he raises the following claims:

 I. Petitioner was denied due process because the prosecutor introduced evidence that the line-up, which was extremely suggestive, had been approved by counsel for petitioner [who] was not present for the line-up.

 II. Petitioner was denied due process because he was sentenced by a judge who had previously represented him in a criminal matter before he became a judge [although] he should have been automatically disqualified from sitting as a sentencing judge.

 III. The jury instructions given at trial were erroneous and undercut the reasonable doubt standard in violation of the defendant's Sixth and Fourteenth Amendment right to due process and a fair trial.

 IV. Petitioner was denied the effective assistance of trial and appellate counsel in violation of the Sixth Amendment to the United States Constitution.

 V. Petitioner has shown cause and prejudice and is entitled to relief.

Pet. at 2.

## II. Standard of Review

Congress has provided by statute that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. An "unreasonable application" occurs if the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411, 120 S.Ct. 1495.

## III. Discussion

### A. Motion for the Appointment of Counsel

On April 30, 2004, petitioner moved for the appointment of counsel, after his petition was filed through counsel. In the motion, petitioner indicates that he is unable to afford counsel, the issues involved in the case are complex, he has a limited knowledge of the law and is being assisted by a prisoner who is a paralegal, and the ends of justice would be served by the appointment of counsel. Petitioner does not mention that an attorney had filed the petition in this case. In a letter written to

petitioner by attorney Jeanice Dagher–Margosian, a copy of which was filed with this court (*see* docket entry 17), Ms. Dagher–Margosian indicates that petitioner's counsel had recently died and she was helping other lawyers to manage the transfer of his cases. Ms. Dagher–Margosian also suggested that petitioner send a notice to this Court that he be allowed to proceed *pro per*, rather than requesting the appointment of another attorney.

■ There is no constitutional right to counsel in habeas proceedings. *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir.2002). "Habeas corpus is an extraordinary remedy for unusual cases" and the appointment of counsel is within the discretion of the Court and required only if, given the difficulty of the case and petitioner's ability, the petitioner could not obtain justice without an attorney, he could not obtain a lawyer on his own, and he would have a reasonable chance of winning with the assistance of counsel. *See Thirkield v. Pitcher*, 199 F.Supp.2d 637, 653 (E.D.Mich. 2002); *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir.1986).

■ In this case, petitioner has obtained the services of an attorney, who filed the petition for writ of habeas corpus accompanied by a twenty-seven page brief. Petitioner has therefore had the benefit of counsel to articulate his claims. This case is not extraordinary and does not require the appointment of counsel. Accordingly, Court will deny the motion for the appointment of counsel.

### B. The Timeliness of the Petition

■ Respondent contends that the petition for writ of habeas corpus should be dismissed as untimely pursuant to 28 U.S.C. § 2244(d)(1). The Court rejects respondent's argument. Petitioner completed his direct appeals with the Michigan courts on August 28, 1998, when the Michigan Supreme Court denied his application for leave to appeal the affirming decision by the Michigan Court of Appeals. Petitioner's conviction became final, for purposes of § 2244(d)(1), when the ninety-day time period for filing a petition for writ of certiorari in the United States Supreme Court expired. *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir.2000). Petitioner's judgment therefore became final on November 26, 1998, when he failed to file a petition for writ of certiorari with the United States Supreme Court. *Fugate v. Booker*, 321 F.Supp.2d 857, 859 (E.D.Mich. 2004). Consequently, Petitioner had until November 26, 1999 to file his petition in compliance with the statute of limitations, unless the one-year period was tolled. *Id.* at 859–60.

■ Petitioner filed his first petition for writ of habeas corpus with the United States District Court for the Eastern District of Michigan on August 29, 1999, after two-hundred and seventy-six days had run on the one-year statute of limitations. The habeas petition was dismissed without prejudice by stipulation on October 24, 2000. Although a petition for federal habeas review is not "an application for state post-conviction or other review" within the meaning of 28 U.S.C. § 2244(d)(2) that would toll the one-year statute of limitations period, *See Duncan v. Walker*, 533 U.S. 167, 181, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001), Justice Stevens indicated in a concurring opinion that neither the Supreme Court's "narrow holding" in *Duncan* nor anything in the text of the Antiterrorism and Effective Death Penalty Act would prevent a federal court from tolling the limitations period for a habeas petition as "a matter of equity." *Id.* at 183, 121 S.Ct. 2120.

This Court considers that the statute of limitations should be equitably tolled during the period in which petitioner's first application for habeas relief was pending

in this Court. *See Rupert v. Johnson*, 83 F.Supp.2d 801, 804–05 (W.D.Tex.1998); *Corbin v. Straub*, 156 F.Supp.2d 833, 837 (E.D.Mich.2001). Because two-hundred and seventy-six days had elapsed on the one-year limitations period prior to the filing of his first application for habeas relief, petitioner had eighty-nine days remaining after the dismissal of his first habeas petition on October 24, 2000, or until January 21, 2001, to either return to the state courts to exhaust his unexhausted claims or to submit a petition to the federal courts that contained only exhausted claims.

■ Petitioner filed a post-conviction motion for relief from judgment with the state trial court on December 14, 2000. The time during which a properly filed application for state post-conviction relief or other collateral review is pending is not counted towards the limitation period in the statute. 28 U.S.C. § 2244(d)(2); *Fugate v. Booker*, 321 F.Supp.2d at 860. A post-conviction application remains pending in the state courts, for purposes of § 2244(d)(2), until it "has achieved final resolution through the state's post-conviction procedures." *Carey v. Safford*, 536 U.S. 214, 220, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). The one-year limitations period is further tolled pursuant to § 2244(d)(2) until the ninety-day time period has expired for seeking certiorari review in the United States Supreme Court of the state's final judgment on the petitioner's state post-conviction motion, regardless of whether the petitioner actually files a petition for writ of certiorari. *See Abela v. Martin*, 348 F.3d 164, 172–73 (6th Cir.2003). In this case, the Michigan Supreme Court denied petitioner's application for leave to appeal on March 31, 2003.

The running of the limitations period would not have resumed until ninety days later, on June 29, 2003. Because the petition was filed on June 18, 2003, the petition was timely filed within the one-year limitations period of 28 U.S.C. § 2244(d)(1).

## C. Procedural Default

■ Respondent contends that petitioner's third and fourth claims should be procedurally barred from habeas review because petitioner failed to raise these claims in his appeal of right and failed to show cause or prejudice for his failure to do so. Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999) (internal citations omitted). In this case, because "the procedural default issue raises more questions than the case on the merits," this Court will assume without deciding that petitioner has not procedurally defaulted on his claims and will address the claims on the merits. *Falkiewicz v. Grayson*, 271 F.Supp.2d 942, 948 (E.D.Mich.2003).[1]

## D. First Claim: Suggestive Identification and Prosecutorial Misconduct

In his first claim, petitioner contends that the pre-trial identification line-up was unduly suggestive. A defense attorney was present at the line-up. Petitioner claims that the prosecutor engaged in misconduct at trial by eliciting testimony from an investigating officer that the defense

---

1. For example, petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise this claim. *See Hicks v. Straub*, 377 F.3d 538, 558, n. 17 (6th Cir. 2004).

attorney approved the composition of the line-up. Petitioner further contends that his trial counsel was ineffective for failing to object to the line-up procedure.

 Due process protects the accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois,* 434 U.S. 220, 227, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). To determine whether an identification procedure violates due process, courts first discern whether the procedure was impermissibly suggestive. If so, courts then determine whether, under the totality of circumstances, the suggestiveness led to a substantial likelihood of an irreparable misidentification. *Kado v. Adams,* 971 F.Supp. 1143, 1147–48 (E.D.Mich.1997) (citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)). Five factors should be considered in determining the reliability of identification evidence:

1. the witness's opportunity to view the criminal at the time of the crime;

2. the witness's degree of attention at the time of the crime;

3. the accuracy of the witness's prior description of the defendant;

4. the witness's level of certainty when identifying the suspect at the confrontation; and,

5. the length of time that has elapsed between the time and the confrontation. *Neil,* 409 U.S. at 199–200, 93 S.Ct. 375.

 A defendant has the initial burden of proving that the identification procedure was impermissibly suggestive. It is only after a defendant meets this burden that the burden then shifts to the prosecutor to prove that the identification was reliable, independent of the suggestive procedure. *See English v. Cody,* 241 F.3d 1279, 1282–83 (10th Cir.2001) (citing *United States v. Wade,* 388 U.S. 218, 240, n. 31, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). If

a defendant fails to show that the identification procedures are impermissibly suggestive, or if the totality of the circumstances indicate that the identification is otherwise reliable, no due process violation has occurred. So long as there is not a substantial misidentification, it is for the jury or fact finder to determine the ultimate weight to be given to the identification. *See United States v. Hill,* 967 F.2d 226, 230 (6th Cir.1992).

 Petitioner first claims that the corporeal line-up was unduly suggestive because he and his co-defendant were both included in the same, seven-person line-up. The fact that the line-up contained more than one perpetrator does not render the identification improper. *See People v. Muniz,* 174 A.D.2d 635, 636, 571 N.Y.S.2d 326 (N.Y.A.D.1991). The Court is not persuaded that the line-up was rendered unduly suggestive in this case by the presence of both co-defendants.

 Petitioner further claims that the line-up was unduly suggestive because the victim was shown the recovered stolen items prior to viewing the line-up. Petitioner contends that showing the items to the victim strongly suggested to the victim that the line-up contained one or more of the suspects. A pretrial line-up is not rendered impermissibly suggestive simply because a witness knows that suspects were in custody when the line-ups were conducted. *See United States v. Bowman,* 215 F.3d 951, 966 (9th Cir.2000); *See also United States v. Carter,* 756 F.2d 310, 313 (3rd Cir.1985) (a statement to a witness that there would be suspect in line-up she was about to view was dangerously suggestive when combined with one-person *show-up,* but not in the case of a *line-up* ). As the Ninth Circuit explained, "[i]t stands to reason that there *is* a suspect at the lineup stage." *Bowman,* 215 F.3d at 966 (emphasis in original). In this case, there

is no indication that the officers informed the victim that the suspects had been arrested or that they would be standing in the line-up. Nor is there any allegation that the police told the victim that he was required to make an identification. In fact, the victim testified at trial that the police "just said see if you can see if one is [the suspect]." (T. 154).

■ Petitioner further contends that the line-up was unduly suggestive because of the discrepancies between the physical characteristics of the seven persons in the line-up. Petitioner indicates that at the time of the line-up, he was thirty-one-years-old and his co-defendant was thirty-five. There was a thirty-eight-year-old participant, but petitioner claims that he was distinguishable from petitioner by weight and size. Petitioner claims that the other participants consisted of two eighteen-year-olds, a twenty-two-year-old, and a twenty-five-year-old. Petitioner further contends that he and his co-defendant were the only participants in the line-up with blond hair, although he does not indicate the hair color of the other participants. Petitioner, his co-defendant, and one other person were the only participants with facial hair. Petitioner further contends that other than the co-defendant and one other person, the other four participants were "substantially shorter," although he does not indicate his height or the height of the other participants.

■ There is no absolute requirement that other persons in a lineup be nearly identical to the suspect. *See Van Tran v. Lindsey*, 212 F.3d 1143, 1156 (9th Cir.2000). As one court has noted: "A lineup of clones is not required." *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir.1998). Law enforcement personnel who conduct line-ups are required only to make reasonable efforts under the circumstances to conduct a fair and balanced presentation; the police "are not required

to search for identical twins in age, height, weight, or facial features." *United States v. Traeger*, 289 F.3d 461, 474 (7th Cir. 2002). Participants in a line-up need only to have descriptive features "within a reasonable range of similarity to each other" in order for the line-up not to be unreasonably suggestive. *See United States v. Curry*, 187 F.3d 762, 769 (7th Cir.1999). In the present case, even if some of the line-up participants were younger, shorter, had different hair color or facial hair, the line-up was not unduly suggestive because petitioner did not "obviously stand out" from the other participants so as to create a substantial likelihood of misidentification. *Van Tran*, 212 F.3d at 1156.

■ Finally, petitioner contends that one of the participants was removed during the line-up, leaving only six participants. A criminal defendant, however, does not have a constitutional right to be surrounded by a specific number of line-up fillers. *See Roldan v. Artuz*, 78 F.Supp.2d 260, 272 (S.D.N.Y.2000).

■ Even if the line-up procedure was unduly suggestive, there was no substantial likelihood of irreparable misidentification because petitioner, by his own statement to the police, admitted that he was one of the persons involved in the home invasion at the Benedict home. *See United States v. Allison*, 616 F.2d 779, 783 (5th Cir.1980). The Court will therefore deny petitioner's claim that the identification procedure was unduly suggestive.

■ The Court will also deny petitioner's related ineffective assistance of counsel claim. A trial counsel's failure to move to suppress an allegedly unreliable, in-court identification is not ineffective assistance, absent a reasonable probability that the suppression motion would have resulted in a decision to exclude the testimony. *See Millender v. Adams*, 187 F.Supp.2d

852, 868 (E.D.Mich.2002); *aff'd* 376 F.3d 520 (6th Cir.2004). In light of the fact that petitioner has failed to show that the line-up procedure here was unduly suggestive, he has failed to show that counsel was ineffective for failing to move for suppression of the pre-trial identification. *Id.* Moreover, defense counsel cross-examined Matthew Benedict at trial about his identification of petitioner from the line-up. Counsel also questioned the police extensively about the line-up procedure. Counsel's decision to attack the credibility of Benedict's identification of petitioner through extensive cross-examination, rather than to object to the in-court identification, was a reasonable trial strategy that defeats the ineffective assistance of counsel claim. *Millender,* 187 F.Supp.2d at 868.

▇▇▇ Finally, the Court will reject petitioner's related prosecutorial misconduct claim. If a petitioner seeking habeas relief makes a claim of prosecutorial misconduct, the reviewing court must consider that the touchstone of due process is the fairness of the trial, not the culpability of the prosecutor. On habeas review, a court's role is to determine whether the conduct was so egregious as to render the entire trial fundamentally unfair. *Serra v. Mich. Dep't of Corr.,* 4 F.3d 1348, 1355–56 (6th Cir.1993). In evaluating prosecutorial misconduct in a habeas case, consideration should be given to the degree to which the challenged remarks had a tendency to mislead the jury and to prejudice the accused, whether they were isolated or extensive, whether they were deliberately or accidentally placed before the jury, and the strength of the competent proof against the accused. *Id.* at 1355–56.

▇▇▇ Petitioner claims that the prosecutor committed misconduct by eliciting testimony that a defense attorney had approved the participants chosen for the line-up. Petitioner contends that this "vitiat-

ed" his defense of misidentification. Petitioner is essentially contending that the prosecutor introduced this evidence to vouch for, or bolster, the identification process. The prosecutor's questioning in this case was not improper because Deputy Swanson merely offered admissible evidence regarding the reliability of the identification process. *See Hall v. Lewis,* 99 Fed. Appx. 829, 831–32 (9th Cir.2004). Petitioner is not therefore entitled to habeas relief on his first claim.

**E. Second Claim: Judicial Disqualification**

Petitioner next contends that the trial court judge should have been disqualified from sentencing petitioner, because the trial court judge had previously represented petitioner in a prior proceeding that resulted in a conviction that was used to enhance petitioner's sentence in this case.

In rejecting this claim, the Michigan Court of Appeals noted that the existence of this prior conviction had not been disputed, and the trial judge's involvement occurred more than ten years before the trial and long before the time period contemplated by the Michigan Court Rule regarding judicial disqualification. *People v. Johnson,* 192067, *2. The Michigan Court of Appeals noted that the trial judge stated at the post-trial motion hearing that he had not used any special knowledge of petitioner's prior conviction in this case. The Michigan Court of Appeals further noted that the record showed "no hint of bias or prejudice." *Id.*

▇▇▇ The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley,* 520 U.S. 899, 904–05, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). To state a claim that a judge is biased, a

defendant must show either actual bias or the appearance of bias creating a conclusive presumption of actual bias. *United States v. Lowe,* 106 F.3d 1498, 1504 (6th Cir.1997). Adverse rulings are not themselves sufficient to establish bias or prejudice that will disqualify a judge. *See Hence v. Smith,* 49 F.Supp.2d 547, 549 (E.D.Mich.1999). In reviewing a judicial bias claim, a court should employ the initial presumption that the assigned trial judge properly discharged his official duties. *See Harrison v. Anderson,* 300 F.Supp.2d 690, 704 (S.D.Ind.2004)(citing *Bracy,* 520 U.S. at 909, 117 S.Ct. 1793).

▮ In the present case, the mere fact that the sentencing judge had represented petitioner in a prior criminal case over ten years prior to the trial in this case would not be a violation of due process, absent a showing that the trial judge displayed any "deep-seated favoritism or antagonism that would make fair judgment impossible" in this case. *See, e.g., Wright v. Stewart,* 64 Fed. Appx. 607, 609 (9th Cir.2003) (internal quotation omitted). Because petitioner has not offered and the Court does not find any evidence that the trial judge in this case was actually biased against him, his judicial disqualification claim is without merit.

### F. Third Claim: Jury Instructions

▮ Petitioner next contends that he was deprived of a fair trial because of defective jury instructions. The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in a collateral proceeding is whether the instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned."

*Henderson v. Kibbee,* 431 U.S. 145, 154–55, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977). To warrant habeas relief, the jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair. *Scott v. Mitchell,* 209 F.3d 854, 882 (6th Cir.2000). A habeas petitioner's burden of showing prejudice is especially heavy when a petitioner claims that a jury instruction was incomplete, because an omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law. *Terry v. Bock,* 208 F.Supp.2d 780, 793 (E.D.Mich.2002); *aff'd* 79 Fed. Appx. 128 (6th Cir.2003); *cert. den. sub nom Terry v. Lafler,* —— U.S. ——, 124 S.Ct. 1717, 158 L.Ed.2d 403 (2004).

▮ Petitioner first claims that the trial court's instruction on the offense of first-degree home invasion was deficient because the trial court failed to instruct the jury that in order to convict petitioner of this crime, they would have to find that another person was present inside of the dwelling at the time of the crime's commission. Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon or that the dwelling be occupied. *See United States v. Garcia–Serrano,* 107 Fed. Appx. 495, 496–97 (6th Cir.2004) (citing Mich. Comp. Laws 750.110a(2)) (emphasis added); *See also* CJI 2d 25.2a(5). In this case, the evidence established that petitioner was armed with a weapon at the time of the breaking and entering. The Michigan Court of Appeals, as well as the trial court, concluded that it was unnecessary under Michigan law to instruct the jury on the alternate theory that a person was present at the time of the crime's commission. Because both the trial court and the Michigan Court of Ap-

peals found that the instruction given by the trial court accurately reflected Michigan law on the elements of first-degree home invasion, this Court must defer to that determination and cannot question it. *Seymour v. Walker*, 224 F.3d 542, 558 (6th Cir.2000); *Howell v. Smith*, 2001 WL 561203, *4 (E.D.Mich. Apr.26, 2001). This claim is therefore without merit.

In rejecting this claim on petitioner's application for post-conviction relief, the trial court and the Michigan Court of Appeals both noted that the first-degree home invasion charge was based on the fact that Petitioner was armed with a weapon while he was in the dwelling, not on the presence of another person in the dwelling. Accordingly, the trial court instructed the jury on the element of possession of a dangerous weapon. Petitioner was therefore not prejudiced by the trial court's failure to instruct the jury on the alternate ground that another person was present in the dwelling. *People v. Johnson*, 235484, Slip. Op. at *3; *People v. Johnson*, 95–7400–FC, Slip. Op. at *2.

Petitioner next claims that the trial court's reasonable doubt instruction was deficient because it defined reasonable doubt "as a fair and honest doubt growing out of evidence or the lack of evidence." Petitioner contends that the instruction was deficient because it did not explain to the jury that a reasonable doubt is one which would cause a juror to hesitate in making an important decision in their life.

■ Jury instructions must be read in their entirety to ensure that the instructions, read as a whole, correctly convey the reasonable doubt concept to the jury. *Ferrazza v. Tessmer*, 36 F.Supp.2d 965, 973 (E.D.Mich.1999). The proper inquiry for a court reviewing a reasonable doubt instruction is not whether the jury instruction could have been applied unconstitutionally, but whether there is a reasonable likelihood that the jury did apply the jury instruction in an unconstitutional manner. *Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). The Due Process Clause of the Fourteenth Amendment neither prohibits nor requires a trial court to *define* reasonable doubt as a matter of course, so long as the trial court instructs the jury on the necessity for guilt to be proved beyond a reasonable doubt. *Id.* at 5, 114 S.Ct. 1239.

■ In the present case, the trial court gave Michigan's standard reasonable doubt instruction to the jury. CJI 2d 3.2. This instruction has been upheld as constitutional. *See Binder v. Stegall*, 198 F.3d 177, 178–79 (6th Cir.1999). Petitioner's contention that the instruction was deficient because it did not include language defining a reasonable doubt in terms of a doubt that would cause the jury to hesitate to act must be rejected. In *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954), the Supreme Court expressly endorsed defining the term reasonable doubt in terms of "the kind of doubt that would make a person hesitate to act." Although the Supreme Court endorsed defining reasonable doubt in such terms, the Supreme Court did not require that this language be used. Several courts, including the Sixth Circuit, have declined to find that the omission of the "hesitate to act" language would render a reasonable doubt instruction unconstitutional, or that the inclusion of the "hesitate to act" language in a reasonable doubt instruction is mandatory. *Szenay v. Yukins*, 178 F.3d 1296, 1999 WL 187482, *7, n. 2 (6th Cir. Mar.10, 1999); *United States v. Taylor*, 997 F.2d 1551, 1556 (D.C.Cir. 1993). In fact, several courts have criticized the use of this language in reasonable doubt instructions. *See Victor v. Nebraska*, 511 U.S. at 24, 114 S.Ct. 1239 (Concurring Op. of Ginsburg, J.); *United States v. Noone*, 913 F.2d 20, 28–29 (1st

Cir.1990). Because the Supreme Court has never required the inclusion of this language in a reasonable doubt instruction, the trial court's failure to include the "hesitate to act" definition does not render the instruction unconstitutional. Accordingly, petitioner is not entitled to habeas relief on his third claim.

### G. Fourth Claim: Ineffective Assistance of Counsel

Petitioner next contends that he was deprived of effective assistance of trial and appellate counsel. To show that he was denied effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two-prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Second, the defendant must show that such deficient performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The *Strickland* standard applies to claims of ineffective assistance of both trial and appellate counsel. *See Bowen v. Foltz*, 763 F.2d 191, 194, n. 3 (6th Cir.1985).

Petitioner first contends that trial counsel was ineffective for conceding petitioner's guilt to the lesser included offense of second-degree home invasion. In rejecting this claim, the Michigan Court of Appeals noted that admitting guilt to a lesser charge can be appropriate trial strategy when evidence of the defendant's guilt is overwhelming. *People v. Johnson*, 235484, 2002 WL 31058064 at *3.

■■■ An attorney may not admit his client's guilt contrary to the client's earlier entered not guilty plea, unless the defendant unequivocally agrees to and understands the consequences of his admission. *Wiley v. Sowders*, 647 F.2d 642, 649 (6th Cir.1981). In *Wiley v. Sowders*, the Sixth Circuit found defense counsel to be ineffective because both defense attorneys repeatedly stated in closing argument that the defendant was "guilty", "guilty as charged", and "guilty beyond a reasonable doubt." The Sixth Circuit found that counsel's arguments represented the "precise admission" that defendant had rejected in his earlier not guilty plea. *Wiley*, 647 F.2d at 649–50. This case is distinguishable from the one in *Wiley*, because petitioner's counsel did not concede that petitioner was guilty of the charged offenses of armed robbery or first-degree home invasion, but argued to the jury that petitioner was guilty only of the lesser included offense of second-degree home invasion. A defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel. *See Haynes v. Cain*, 298 F.3d 375, 381–82 (5th Cir.2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir.1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir.1991).

■■■ In the present case, the evidence against petitioner was overwhelming. Defense counsel's decision to concede peti-

tioner's guilt to the lesser included offense of second-degree home invasion, in an attempt to win an acquittal on the charged offenses, was a legitimate trial strategy and not a complete abandonment of petitioner's case by counsel. Petitioner has failed to show that trial counsel was ineffective in this regard.

Petitioner next claims that his counsel was ineffective for failing to object to the allegedly erroneous first-degree home invasion instruction. In the present case, the first-degree home invasion instruction was determined by both the trial court and the Michigan Court of Appeals on post-conviction review to be a correct statement of Michigan law. Thus, counsel's failure to object to the instruction was not ineffective. See Phyle v. Leapley, 66 F.3d 154, 160 (8th Cir.1995).

 Petitioner next contends that his appellate counsel was ineffective for failing to raise his third and fourth claims on his appeal of right. The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. Evitts v. Lucey, 469 U.S. 387, 396–97, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Court appointed counsel, however, does not have a constitutional duty to raise every non-frivolous issue requested by a defendant. Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). An attorney's failure to present a non-meritorious issue on appeal does not constitute ineffective assistance of counsel. Daniel v. Overton, 845 F.Supp. 1170, 1176 (E.D.Mich.1994).

 In this case, petitioner's third and fourth claims are without merit. Appellate counsel was therefore not deficient in failing to raise these issues on his direct appeal. Moreover, even if appellate counsel was ineffective for failing to raise these two claims on his direct appeal, petitioner was able to raise these two claims in his post-conviction motion for relief from judgment, where he was represented by counsel. The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore any negligence by counsel in the appeal of right did not cause petitioner any injury. See Gardner v. Ponte, 817 F.2d 183, 189 (1st Cir.1987). The failure to raise these two claims on appeal did not cause petitioner any demonstrable harm because his claims were eventually considered and rejected on valid state grounds by the same courts that would have heard his direct appeal. See Bair v. Phillips, 106 F.Supp.2d 934, 943 (E.D.Mich.2000). Petitioner is therefore not entitled to habeas relief on his fourth claim.

## IV. *ORDER*

Accordingly, **IT IS HEREBY OR-DERED** that the petition for writ of habeas corpus [docket entry 1] is **DENIED**.

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a MOTION for a COA within **TWENTY-ONE (21) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. See Castro v. United States, 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."*) (emphasis added). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **SEVEN (7) DAYS** of service of Petitioner's motion for a COA.